First case on the docket is number 518-0559 Robert Hilligoss v. Andrew Hilligoss. Counsel ready? Ready. Okay, you may proceed. Thank you, your honors. Counsel, my name is Anthony Swearingen and I represent the appellant in this case for purposes of the oral arguments. May it please the court. We're here today because two little girls are not allowed to see their grandparents because of their mother's vindictive motives. And while the statute grants substantial power to a parent to restrict contact with grandparents, that power is not absolute. And in this case, it is unreasonable. The mother in this case has had control over the grandparents' time with the children, at least since her late husband's passing. Also, we would argue that she had control over the visitation with the grandparents during the marriage. She was the reason the grandparents had maybe what you would call limited visitation. Consistent, saw them a couple times a year, but not an overwhelming amount of visitation. In the period of time where father filed for divorce and was separating from the mother, the grandparents' time with the grandchildren increased exponentially. Their relationship with the grandparents increased dramatically. They had a great relationship that blossomed and bloomed during that period of time where their access to the grandchildren were no longer restricted. The mother gave several reasons for why she would restrict the visitation with the grandparents, none of which have any sort of basis in logic or reasoning. Was this, when you mentioned restrictions, supervised visits, is that what we're talking about then? Where someone else had to be, or maybe the mother herself, had to be around the kids when they were visiting the grandparents? Are those the restrictions? No, Your Honor. The real restrictions in this case is no visitation at all. If you'd like me to address the difference between supervised and unsupervised visitation, I think that distinction is that, yes, the grandparents did persist in their attempts to try to get unsupervised visitation. And at trial they testified that they would want unsupervised visitation, but that was up for the trial court to decide. The trial court could decide whether the grandparents get unsupervised visitation, supervised visitation, how much time to give them. The grandparents did ask for that, but it wasn't an end-all, be-all. It was up for the court to decide. And the court in this case decided no visitation at all. They didn't decide, well, supervised is fine. No, they decided no visitation at all. And that's why we believe that their decision was against the manifest way to the evidence. What we're talking about here is two little girls and their relationship with their grandparents. And the facts support that the grandparents did have a strong relationship with the grandparents. The grandchildren and the grandparents had a strong relationship. For the court to suggest that no visitation with the grandparents was appropriate in this case flies in the face of justice. It's not only against the best interest of the children in this case, but it's also against the current statute because we did prove what we need to prove. This is not about the best interests of the grandfathers. Correct. So you have a two-part test. Correct. That there has to be, first, an unreasonable denial, and, second, that there was caused undue mental, physical or emotional harm. What evidence is there of undue mental, physical or emotional harm? Thank you, Your Honor. So the things that came out in the facts of this case for, and we'll rule out physical harm because there's no evidence of that whatsoever. So we're talking about mental or emotional harm. There was the Alton Parade where the uncle in the case was walking in the parade and he saw his nieces standing on the side of the parade and they were waiting for candy. Instinctively, the uncle went over to the kids and tried talking to them and giving them a hug. The mother held them back. The mother did not allow the children to approach the uncle as they may have wished to do. Is there any medical testimony about harm to the children? No medical testimony, Your Honor. One thing that the appellee brings up in his brief is the issue of sanctions, and you have not filed a reply brief.  Yes, Your Honor. So the appellee is asking for sanctions saying that this was not a proper appeal to the appellate court because it's a frivolous appeal. He said that it was not taken in good faith. It was taken for an improper purpose. It was taken to harass or cause unnecessary delay or needlessly increase the cost of litigation. What's your response to that? Our response to that is that that is not true. There's no reason to give sanctions in this case. There is a gap in the law that allows for our appeal. The gap in the law is under the undue mental or emotional or physical harm aspect. The courts haven't decided what harm is required for us to meet our burden. The courts have said what harm can not count by itself as harm for the test. So it was Flynn v. Hinkle that stated neither, one, denial of an opportunity for grandparent visitation, nor, two, a child never knowing a grandparent who loved her and who did not undermine the child's relationship with her parent is harm that will rebut the presumption of innocence. It's a presumption from the grandparent visitation statute that a parent's denial of grandparent's visitation is not harmful to the mental, physical, or emotional health. So that case said that general harm is not enough. But we go further than that. We say that in the facts of the case, there is evidence of harm. In the parade, when the mother held the children back, the children cried. The children were upset. The court could infer from that that these children are going through something emotionally damaging by the fact that they're not getting time with their grandparents. And they're not getting to see their father's side of the family. One of the things that sets this case apart is that not only did the father die before the filing of the petition, but that the grandmother in this case passed away during the course of these proceedings. So all the time that the mother had restricted the grandparent's ability to see the children during the life of this case, we can't get back for grandma. Grandma is not going to be able to see the children again. And so what we want is to protect grandfather in the time that he has left and allow him to keep some sort of relationship with the children. Reason being because the children deserve it. The children deserve to have that connection with their father. The children deserve to have that relationship with their father's family. So back to the undue mental or emotional harm that we were talking about. In addition to the parade where the mom held the girls back and they cried, there was this dinner that the grandparents were having at a restaurant called Moonlight in Alton. And grandparents sat down for dinner. Mom showed up with the kids and her parents, and they went to a separate room to eat. As the grandparents were leaving, the girls, the mom came out with one of the girls. The girls ran up and hugged the grandparents, hugged father's family. And the other child came out from the room where she was in and came out and hugged the father's family. This shows how close of a relationship the grandparents and the grandchildren have. And the court can infer from that that there is mental or emotional harm to be done when the visitation is not allowed by the mother. So the above facts of two instances, the parade and the dinner, when paired with the general harm caused by denial of visitation to a grandparent, is enough to overcome the presumption that the parent's decision was in the best interest of the children. Now, let's go back and talk about… This parade incident did not involve the grandfather, did it? It did not. And all you have is the children allegedly crying. But the trial court found there was no evidence of harm to the children, didn't it? The trial court found… So the order that the trial court entered was a proposed order that was proposed by the petitioner that the trial court signed off on. The trial court found multiple things, that there was not an unreasonable denial of visitation, that there was no undue mental or emotional harm, and it also weighed the factors in the case and found that the factors weighed against us. The trial court's findings are reviewed by this court under a manifest weight standard, is that correct? That's correct. It's not for us to second-guess the trial court's findings as long as there's evidence to support what the trial court found, is that correct? That's correct. Here, the trial court ignored specific pieces of evidence that it should have taken into consideration. Most importantly, the period of time where the divorce was filed and the parents were undergoing separation, the amount of contact that the grandparents had with the grandchildren during that period of time was ignored by the trial court. Our evidence of mental or emotional harm, both the parade and the dinner, were ignored by the trial court. So, for unreasonable denial of visitation, and the reason we think that the judge's decision is against the manifest weight of the evidence is because we did prove unreasonable denial of visitation. The mother, at some point during the case, just completely stopped messaging the petitioners back, the grandparents back. There was an 18-month period between December of 2016 and June of 2018 where the grandparents got to see the child one time. The court failed to confer. Kevin testified that when mother stopped messaging them back, and Kevin is the uncle, I'm sorry. When mother stopped texting them back, the lawyers, she sent them the agreement that the lawyers had wrote up and then stopped responding. He felt at that point that she would not respond anymore. So, the grandparents were under the belief that mother was no longer willing to give them any more visitation and was going to cut them off completely for any sort of further visitation. That's what we're talking about here today. That when the visitation completely stops and when the grandchildren are cut off from their father's family and cut off from the memories of their father, which would be supported by the grandparents, it's harmful to the children. And that is within the mental or emotional harm part of the test. The issue here is that the statute doesn't give absolute power to parents, as some people might suggest. It limits a parent's power insofar as if you can show that there was undue mental, physical, or emotional harm done to the child or children by the stopping of visitation. You get in the door and you can get grandparent visitation. So, what we argue here today is that we had enough evidence to show unreasonable denial of visitation. Thank you. Thank you, sir. You'll have an opportunity for a rebuttal. Good morning. Good morning. May it please the Court, for the audio record, my name is Curtis Blood. I'm from Collinsville. And I represent the mother in this case. And we ask this Court to affirm the judgment and to award sanctions for frivolous appeal. I don't like to make that argument. It disturbs me to have to make that argument. You kept me up last night having to come in here and say it, but it needs to be said. My client did not hire me to come here because there's any merit to this appeal. My client hired me to come here because she fears and respects the power of this Court. And I wonder if the other side of this case has the same respect and fear for this Court. We shouldn't be here. I heard, I just heard, I couldn't believe it, the statement that this case is about no visitation at all. This case is not about no visitation at all. Justice Overstreet, you correctly, you nailed it with your question. With 16 words, trial counsel to the grandfather explained the position of the grandfather at trial. He said, we want a block of time without the mother being present. That's it. That's all we've ever wanted. That's all we've ever wanted. A block of time without the mother being present. That's at page 135 of the trial transcript. Article 135. That's all we've ever wanted. The mother allowed visitation as long as she was there. This lawsuit was filed in March of 16. The last visit was December of 16, nine months after the suit was filed. The mother visited the grandparents. Since then, there hasn't been any visit, at least not a record. And it's understandable that when someone sues you, has your deposition taken, brings you into court, it has kind of a chilling effect on the Christmas card list. But this case is not about lack of visitation. It's not about lack of visitation. Trial court tried to analyze this under the statute, but there's no right of grandparents to visit a child, a minor child, without the mother being present. That's kind of creepy. The statute... How old are the kids? Where are the kids? I'm sorry, I wrote it down. One is born in 09, and just coming up to 10 years old. That's the oldest. And the other has just turned six. Yeah, I don't know if I would say it's creepy for grandparents to have kids that age. You know, it depends on circumstances, right? It does. So as a general statement, I just comment. I don't think that's creepy. Well, I'm trying to think back to my own childhood. And other than the time when my mother was extremely sick, I don't recall being left alone with my grandparents. I just don't recall it. It's something that one might do, but it would take a certain comfort level. And when it's just a simple demand to get out of here, instead of encouraging, it kind of raises the hackers. It kind of makes the hair stand up. Well, what do you want to do with me gone that you can't do with me here? It's uncomfortable. It's just uncomfortable. Why are you insisting on getting me out of here? What does the record show as far as the time that these kids had with their grandparents while the parties were married, before the separation, you know, took place? They did not. The grandparents did not babysit. Of course, the grandmother is deceased. The grandparents did not babysit, did not participate in child care. The mother described the visits as about eight times a year, never with the parents gone, not once. That's the description in the record. And it all comes, of course, from the mother. There was no contrary testimony. Again, aside from the fact that the standards manifest weight, there was not even an attempt to show harm. And the trial court said he didn't say he believed our evidence on harm to the children over the grandfather's evidence. He didn't say that. He said there's no evidence. He said there's no evidence of harm. That's what the trial court said. Again, what are we doing here?  Thank you. Thank you, counsel. Rebecca? Thank you, Your Honor. Again, I address the issue of sanctions. The problem here is that, as I've stated, there is a gap in the law as it relates to grandparent visitation. There was a recent change, as I'm sure you recall, where the U.S. Supreme Court came down and said that leaving parents on a level playing field with grandparents and just assessing the best interest of children is not enough. So the case law went through the courts in Illinois, and our Illinois statute for grandparent visitation was ruled unconstitutional for the same reason. And so now we have this new statute, and there's not a whole lot of case law to back that statute up. And the case law that surrounds the issue of what kind of harm is required to meet a showing of harm under the statute is pretty slim. As I've stated, Flynn v. Hinkle tells us what kind of harm doesn't qualify, but nothing states specifically how much harm you need to show. And so if the record reflected no harm at all, then that would be a problem. But there was harm in the facts of the case where you can see that the children were disturbed by this lack of visitation with the grandparents, this lack of visitation with the father's family. And that harm to the children is something that I can't show you a picture of. It doesn't show up in an X-ray, but it's still real to them. And it is something that children experience in these types of cases that has a lasting effect that can't be remedied without court-ordered visitation with the grandparents. Counsel stated that the children were not left alone with the grandparents. That's not true. At least during the father, it was testified to that father would bring the children over and leave the children with the grandparents without the mother. So if we relied on mother's testimony, we would only know what she saw. But father would bring the kids over separate from the mother as well, and especially during the period of time after the divorce was filed. So sanctions are absolutely not appropriate in this case where the law isn't clear as to what level of harm we need. We only know the level of harm that we don't have, and that's not this case. This isn't a case of, you know, just saying that the harm is from grandparents not seeing the grandchildren. Well, no, because we've established that there's a relationship. We've established that that lack of visitation is affecting the grandchildren. And through that, we think we can establish harm. Thank you. Thank you, counsel, for your arguments. The court will take this matter under advisement and render a decision in due course.